FREDERICKA HOMBERG WICKER, Judge.
|2In this suit on an open account, the plaintiff/appellant, Ochsner Clinic Foundation (“Ochsner Clinic”), appeals the trial court’s ruling dismissing its claim against the defendant/appellee, Ms. Annabelle Ar-guello. The trial court found that Ochsner Clinic failed to prove the accuracy of the bill. For the reasons that follow, we affirm.
Procedural Background
On December 2, 2008, Ochsner Clinic mailed Ms. Arguello a demand letter, certified return receipt requested, in which it stated that she was indebted to the clinic in the amount of $4,677.99. The demand letter was returned unclaimed on December 25, 2008. Thereafter, on April 29, 2009, Ochsner Clinic filed a “Suit on Open Account” against Ms. Arguello for $4,677.99 plus interest and attorney’s fees. Ms. Arguello answered the petition on June 16, 2009, asserting various exceptions as well as pleading “all affirmative defenses set forth in the Louisiana Code of Civil Procedure applicable herein.”
After several pretrial motions, the trial commenced on April 14, 2010, but neither Ms. Arguello nor her attorney were present. However, the trial .judge fallowed Ochsner Clinic’s witness, Mr. Richard Joynt, to testify.[1] Mr. Joynt, the supervisor in the guarantor follow-up department at Ochsner Clinic, first testified about the authenticity of the bills. He then testified that the disputed amount of $4,677.99 had not been paid. The disputed amounts arose from two separate bills. The first bill, which included dates of service ranging from October 31, 2005 through July 9, 2007, was in the amount of $696.08. The second bill, which included dates of service ranging from September 11, 2007 through April 10, 2008, was in the amount of $3,981.91. Ochsner Clinic introduced check number 4028 into the record, which was a $435.50 check authorized by Ms. Arguello on September 28, 2007, and made payable to CSD Collection Specialists. Mr. Joynt testified that check 4028 was not in reference to the disputed bill, stating that CSD Collection Specialists was not a collection agency that Ochsner Clinic used. After Mr. Joynt’s testimony, the case was held open until April 16, 2010.
When the trial commenced on April 16th, Ms. Arguello testified that she had been an “Ochsner”[2] patient for twelve years. She testified, however, that she was not indebted to “Ochsner” for $4,000 *624 but rather owed closer to $2,000. She testified that she visited Ochsner Clinic on April 10, 2008 for a regular check-up but did not have any exams or tests performed that day. The documentary evidence, however, reflects that Ochsner Clinic performed both an MRI and kidney imaging that day and that it billed Ms. Arguello $1,244.00 for the MRI and $641.00 for the kidney imaging. Ms. Arguello disputed those charges at trial.
Ms. Arguello testified that on April 18, 2007, she paid “Ochsner” the amounts of $4,637.15 and $356.25. The record substantiates this testimony. The |4record reflects that check number 4002 was made payable to Ochsner Hospital on April 18, 2007, in the amount of $356.25. Alton Ochsner Medical Foundation endorsed the check “For Deposit Only.” In addition, check number 4003 was made payable to Ochsner Clinic on April 18, 2007, in the amount of $4,637.15. That check was endorsed “For Deposit Only Ochsner Clinic MC 3101.” Both checks appear to have been withdrawn from Ms. Arguello’s bank account on April 23, 2007.
At the conclusion of Ms. Arguello’s testimony, the trial judge noted that the documentary evidence was ambiguous. She then requested billing statements that preceded the dates shown on the documents introduced into evidence. She also requested additional testimony from an Ochsner Clinic employee who could explain the billing system. Court recessed, and the case was held open until June 22, 2010.
When the trial resumed, Mr. Joynt was recalled as a witness. He testified that checks 4002 and 4028 were not applied to the disputed bill. He further testified, however, that check 4003, in the amount of $4,637.15, was applied to the Ochsner Clinic account and that the amount sued for already took that payment into consideration. Mr. Joynt further testified that Ms. Arguello made a $500 Chase credit card payment on June 10, 2008, and that the outstanding balance of $4,677.99 already took into consideration that the $500 payment had been applied as well. Mr. Joynt clarified that he did not have personal knowledge about the accuracy of the fees. He confirmed, however, that the billing summaries were kept in the ordinary course of business.
At the conclusion of trial, the court took the matter under advisement and rendered its judgment on July 23, 2010, dismissing Ochsner Clinic’s claim. Ochsner Clinic appealed.
| ¿Assignments of Error
Ochsner Clinic contends that the trial court erred in failing to find that it established a prima facie case; by improperly permitting Ms. Arguello to testify regarding affirmative defenses which were not specifically plead; and by resolving conflicting testimony on the contested items in its billing summaries.
Discussion

First Assignment ofEn’or

In its first assignment of error, Ochsner Clinic contends that the trial court erred in failing to find that it established a prima facie case.
La. R.S. 9:2781, which sets forth the procedures for suits on open accounts, provides, in pertinent part,
[w]hen any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be> liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Citation and service of a petition shall be deemed *625 written demand for the purpose of this Section.
In order to sustain an action on an open account, a plaintiff-creditor bears the burden of proving his demand by a preponderance of the evidence. Universal Health Services v. Lopez, 562 So.2d 1079, 1081 (La.App. 4 Cir.1990). In proving an open account, plaintiff must first prove the account by showing that it was kept in the course of business and by introducing supporting testimony as to its accuracy. General Electric Co. Inc. v. Louisiana Electrical Supply Co. Inc., 460 So.2d 34 (La.App. 1 Cir.1984). Once the plaintiff-creditor has established a prima facie case, the burden shifts to the debtor to prove the inaccuracy of the account or to prove that the debtor is entitled to certain credits. Id. (citation omitted).
In the present case, Ochsner Clinic met its initial burden by proving that the account was kept in the ordinary course of business and by introducing supporting | ^testimony as to its authenticity. Ochsner Clinic introduced two billing summaries which detailed the services Ms. Arguello received as well as the fees charged for those services. Though Mr. Joynt could not testify regarding the accuracy of the fees, his testimony confirmed the authenticity of the billing summaries, which as this Court stated in Sears, Roebuck and Co. v. Bennies, 03-1160, 03-1161, p. 8 (La.App. 5 Cir. 3/30/04), 870 So.2d 1080, 1085, is all that is required:
The witness laying the foundation for admissibility of business records need not have been the preparer of the records. ... Nothing in the Code of Evidence specifically requires either that the foundation witness be able to personally attest to the accuracy of the information contained in the documents.
Therefore, Mr. Joynt’s testimony was sufficient in helping Ochsner Clinic meet its initial burden in this case. Because Ochs-ner Clinic met that burden, the burden then shifted to Ms. Arguello to prove either the inaccuracy of the bill or that she was entitled to certain credits. Our review of the record reveals that Ms. Arguello successfully proved that the billing summaries were inaccurate.
In this case, the $4,637.15 check which Ms. Arguello made payable to Ochsner Clinic on April 18, 2007 was credited to her Ochsner Clinic account on April 20, 2007. The record reflects that those funds were then withdrawn from her bank account on April 23, 2007. Ochsner Clinic argues that this payment is irrelevant because it was made prior to the dates that she received service and therefore it could not have possibly been applied to the amount sued upon. We note, however, that the billing statement which reflects the $4,637.15 payment includes approximately 21 dates of service that precede the date that the check was applied. This, therefore, diminishes Ochsner Clinic’s claim that the payment could not have been for any of the amounts sued upon in this case. We also note that Mr. Joynt testified that Ms. 17Arguello remitted a $500 credit card payment and that it was applied to her account on June 10, 2008. Yet, the documents in evidence reflect “last payment dates” before the June 10th payment. The first billing statement indicates a last payment date of April 20, 2007; while the second billing statement indicates a last payment date of May 12, 2008. Mr. Joynt could not offer an explanation as to why the $500 payment was not reflected on either of the two documents but insisted that Ms. Arguello had been given credit for that payment.
The court of appeal may not set aside the trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Sears, supra, at 1084, cit *626 ing, Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Furthermore, “where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.” Id. We find that the discrepancy between the documentary evidence and Mr. Joynt’s testimony casts doubt on whether Ms. Ar-guello received proper credit for all payments she may have made. Therefore, we find no error in the trial court’s conclusion that Ochsner Clinic failed to establish, with sufficient evidence, the accuracy of the account.

Second Assignment of Error

In its second assignment of error, Ochsner Clinic contends that the trial court improperly permitted Ms. Arguello to testify as to affirmative defenses which were not pled in the answer. Ochsner Clinic contends that the admission of the $4,637.15 check and Ms. Arguello’s testimony regarding this payment should have been disallowed because she failed to specifically plead prior payment as an affirmative defense. As Ochsner Clinic points out in its brief, however, “the receipt of this payment |R[$4,637.15] is reflected on the statement showing a balance of $696.08,” which is the document it introduced into evidence.
The purpose of La. C.C.P. art. 1005 is to prevent surprise by giving the plaintiff fair notice of the nature of the defense, thereby preventing interjection of unexpected issues. Perfection Metal & Supply Co. v. Independent Supply of N.O. Inc., 97-800, p. 8 (La.App. 5 Cir. 1/14/98), 707 So.2d 86, 90. Because Ochsner Clinic already had knowledge of this payment, which was reflected in its own exhibit, allowing Ms. Arguello’s testimony about the payment and admitting the check into evidence was harmless error.

Third Assignment of Error

In its final assignment of error, Ochsner Clinic contends that the trial court erred in resolving conflicting testimony between it and Ms. Arguello on the contested items of the billing summaries, specifically arguing that Ms. Arguello failed to establish that she was entitled to any credits. As stated in the first assignment of error, once the plaintiff-creditor has met its initial burden, the burden shifts to the defendant to prove either the inaccuracy of the bill or that she was entitled to certain credits. General Electric, supra (emphasis added). We have already determined that Ms. Arguello proved the inaccuracy of the bill. Therefore, she was not required to also prove that she was entitled to any credit.
For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

. Richard Joynt had previously come to court prepared to testify but the trial did not commence. The trial judge allowed Mr. Joynt to testify in order to avoid any more inconvenience to him. Ms. Arguello’s attorney’s partner happened to be in court and sat in on the proceeding.

. Ms. Arguello was a patient at Ochsner Clinic and Ochsner Hospital; however, she did not distinguish the two during her testimony.